**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| SEASONAL SPECIALTIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL CHRISTMAS PRODUCTS, INC.,<br><br>Defendant. | Civil Action No. 23-11123 (GC) (JTQ)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon the application for claim construction regarding U.S. Patent Nos. 9,554,437 (the '437 patent) and 10,080,265 (the '265 patent), collectively the patents-in-suit, by Plaintiff Seasonal Specialties, LLC and Defendant National Christmas Products, Inc. The parties submitted a Joint Claim Construction and Prehearing Statement (ECF No. 68) and each party submitted its own opening brief (ECF Nos. 69 (Plaintiff's brief), 70 (Defendant's brief)) and response brief (ECF Nos. 72 (Plaintiff's brief), 73 (Defendant's brief)). The Court has carefully considered the parties' submissions and arguments presented during the *Markman* hearing. For the reasons set forth below, and other good cause shown, the Court construes the disputed claim terms as follows.

## I. BACKGROUND AND PROCEDURAL HISTORY

The Court writes exclusively for the parties, who are familiar with the procedural and factual history of this case, and will set forth only those facts necessary to this Court's analysis. The patents at issue relate to "decorative lighting strings of lights having a plurality of bulbs spaced

along the string." (ECF No. 69-3 ('437 patent) at 1:14-15; ECF No. 69-4 ('265 patent) at 1:14-15.)

On July 16, 2025, the parties submitted a Joint Claim Construction and Prehearing Statement pursuant to Local Patent Rule 4.3 identifying nine claim terms in need of construction by the Court. (ECF No. 68.) The parties submitted opening *Markman* briefs on September 8, 2025. (ECF Nos. 69, 70.) The parties filed their responsive briefs on November 7, 2025. (ECF Nos. 72, 73.) On February 5, 2026, pursuant to Local Patent Rule 4.6, the Court held a *Markman* hearing to construe the disputed claims. (ECF No. 80.) After the hearing, the parties submitted a joint letter and proposed consent orders as to the definition of a person of ordinary skill in the art (POSA) as well as the construction of certain agreed-upon terms. (ECF No. 82.) In that letter, the parties voiced a continued dispute as to the term "interrupt." (*Id.* at 1-2.)[1] Thus, the Court has nine disputed claim terms remaining before it.

## II.     CLAIM CONSTRUCTION STANDARD

The meaning and scope of patent claims are questions of law to be decided by the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks and citation omitted). "[T]here is no magic formula or catechism for conducting claim construction." *Id.* at 1324. Instead, the Court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.* "Claim construction begins with the intrinsic evidence of the patent—the claims, the specification, and the prosecution

---

[1]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

history—and may require consultation of extrinsic evidence to understand the state of the art during the relevant time period." *Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, Civ. No. 17-6921, 2019 WL 943532, at *2 (D.N.J. Feb. 26, 2019) (quotation marks and citation omitted); *see also Phillips*, 415 F.3d at 1314-17.

First, the court "look[s] to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The "words of a claim 'are generally given their ordinary and customary meaning,'" which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d. at 1312-13 (quoting *Vitronics Corp.*, 90 F.3d at 1582). The POSA "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. Accordingly, "the claims themselves provide substantial guidance as to the meaning of particular claim terms," and a court may look to "the context in which a term is used in the asserted claim" and "[o]ther claims of the patent in question, both asserted and unasserted." *See id.* at 1314.

Second, the specification is "always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp.*, 90 F.3d at 1582; *see also Phillips*, 415 F.3d at 1315 (noting that claims "are part of 'a fully integrated written instrument,'" and "'must be read in view of the specification, of which they are a part'") (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978-79 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996)). "Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner

other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Vitronics Corp.*, 90 F.3d at 1582. However, while "[t]he written description and other parts of the specification [] may shed contextual light on the plain and ordinary meaning . . . they cannot be used to narrow a claim term to deviate from the plain and ordinary meaning unless the inventor acted as his own lexicographer or intentionally disclaimed or disavowed claim scope." *Aventis Pharms. Inc. v. Amino Chemicals Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013).

Third, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman*, 52 F.3d at 980. Here, neither party provided the prosecution history as evidence in the *Markman* hearing, nor does it otherwise appear in the record.

Finally, in some cases, the "district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. However, "[i]n those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper." *Vitronics Corp.*, 90 F.3d at 1583. "When an analysis of *intrinsic* evidence resolves any ambiguity in a disputed claim term, it is improper to rely on extrinsic evidence to contradict the meaning so ascertained." *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003) (emphasis in original). "Extrinsic evidence [] cannot be used to alter a claim construction dictated by a proper analysis of the intrinsic evidence." *On-Line Tech. v. Bodenseewerk Perkin-Elmer*, 386 F.3d 1133, 1139 (Fed. Cir. 2004).

## III.    CLAIM CONSTRUCTION

As a threshold issue, at the *Markman* hearing the parties agreed to adopt Defendant's definition of a POSA, defined as an individual who "would have had at least a bachelor's degree in computer engineering, electrical engineering, or equivalent, and at least two years of experience related to electronic devices or related fields."  (ECF No. 70 at 13-14; ECF No. 81 at 5:24-6:4.)

The Court holds that the plain and ordinary meaning of the identified terms is controlling and therefore, no construction is necessary for any of the claim terms at issue here.  The plain and ordinary meaning of these claim terms is clear when read in the context of the claims and specifications of these patents.  *See Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358 (Fed. Cir. 2016) ("Claim terms are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history.").  However, because of the disputes between the parties about the terms' meaning, the Court will address each of the nine disputed terms and their plain and ordinary meanings herein for clarity.  *See Intell. Ventures I LLC v. Check Point Software Techs. Ltd.*, Civ. No. 10-1067, 2012 WL 6200337, at *4 n.2 (D. Del. Dec. 12, 2012) (collecting cases) (holding that a determination that a claim term has its plain and ordinary meaning may be inadequate in the face of the parties' dispute).

"Illumination element"

The Court finds that no construction is necessary for "illumination element" as it appears in claims 1-4 of the '265 patent.  The ordinary and customary meaning of the term is a bulb, "such as an LED, incandescent lamp or equivalent which produces light in response to electrical current." ('265 patent at 4:3-6.)   However, in light of the parties' dispute regarding the meaning of "illumination element," (*see* ECF No. 68 at 10), the Court looks to the patent specification.  The specification of the '265 patent specifically recites that:

5

> A "bulb" in this instance is an illumination element, such as an LED, incandescent lamp or equivalent which produces light in response to electrical current.

('265 patent at 4:3-6.)  The only point of disagreement at the *Markman* hearing appeared to be the definition of "LED," which the specification lists as an example of an illumination element.  (ECF No. 81 at 41:12-45:12; '265 patent at 4:3-6.)  However, the parties did not ask the Court to construe the term "LED," and such construction is not necessary to construe the term at issue.  *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.").

<u>"In communication with said illumination element"</u>

The Court finds that no construction is necessary for the term "in communication with said illumination element" as it appears in claim 11 of the '437 patent.  Defendant argues that this term is indefinite because the claim does not specifically identify which component(s) are in communication with the illumination element.  (ECF No. 70 at 17.)  The Court disagrees.  A claim is indefinite if, "*read in light of the specification* delineating the patent, and the prosecution history, [it] fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) (emphasis added).  The specification states in no ambiguous terms that "a first switching circuit" is "in communication with said illumination element."  ('437 patent at 8:27-28; *see also id.* at 4:21-28 ("There is disclosed a system . . . having an electrically powered illumination element and a *first switching circuit in communication with said illumination element* for controlling the flow of current to the element.") (emphasis added).)  Plaintiff proffers a construction of the term as "a switching circuit for controlling power connected to the illumination element . . ." (ECF No. 69 at 18), but this is improperly expansive in light of the clarification already inherent the specification.  *Aventis Pharms. Inc.*, 715 F.3d at 1373 (holding that while "[t]he written description and other parts of the

6

specification [] may shed contextual light on the plain and ordinary meaning . . . they cannot be used to narrow a claim term to deviate from the plain and ordinary meaning unless the inventor acted as his own lexicographer or intentionally disclaimed or disavowed claim scope").

<u>"Proceed to said special lighting effects" and "proceeding to other special lighting effects"</u>

The Court finds that no construction is necessary for the term "proceed to said special lighting effects" as it appears in claim 11 of the '437 patent and "proceeding to other special lighting effects" as it appears in claim 1 of the '265 patent. "The claim itself expressly defines the functional contrast: the illumination element switches"[2] from "an initial steady on illuminated state" and "then proceed[s] to said special lighting effects." ('437 patent at 9:16-18;'265 patent at 8:34-35 ("starting from an initial on illuminated state . . . and proceeding to other special lighting effects").) The parties agree that "special lighting effects" are pulsing/twinkling, changing color, shimmering or flashing as described in the specification. (ECF No. 81 at 53:1-4 (describing that special lighting effects are "substantially non-uniform illumination visual lighting effect[s]. Which is, you know, could be blinking or twinkling"); '437 patent at 1:28-36, 2:47-54; '265 patent at 1:28-36, 2:47-54.) Thus, the parties do not appear to disagree as to the term's meaning, which is to proceed from steady-on[3] to a visual lighting effect. Defendant proposes the addition of "state"

---

[2]    *Seasonal Specialties, LLC v. Holiday Designs, LLC*, Civ. No. 23-14008, 2025 WL 3702534, at *4 (N.D. Ill. Dec. 22, 2025) (finding no construction is necessary for the term "special lighting effect" because "[t]he claim itself expressly defines the functional contrast: the illumination element switches between 'having [the] visual appearance of steady-on' and a 'visual appearance of a predetermined special visual function.' ('437 patent, col. 8:21-24.) The specification elaborates that the 'first switching circuit' initiates a lighting effect 'starting from an initial steady on illuminated state' and then proceeds to 'special lighting effects' that are 'periodically repeated.' (*Id.*, col. 4:31-36.) The contrast between 'steady ON' and 'special lighting effect' is intrinsic to the patent's operation and clearly understood by a person of ordinary skill in the art.").

[3]    The parties have agreed upon the construction of "steady-on" as the "appearance of substantially uniform illumination." (ECF No. 82-1 at 3, ECF No. 82-2 at 3.)

to the end of this term.  (ECF No. 70 at 19, 21.)  However, this is not necessary in light of the plain and ordinary meaning of the term.

"Said special lighting effects" and "said special lighting effect"[4]

The Court finds that no construction is necessary for the terms "said special lighting effects" and "said special lighting effect" as they appear in claim 11 of the '437 patent and claim 1 of the '265 patent.  Defendant contends that the terms are indefinite because a POSA "would be unable to ascertain the lighting effects to which that term refers."  (ECF No. 70 at 24.)  The Court disagrees.  The claims themselves in both the '437 and '265 patents explain that an illumination element switches "between having visual appearance of steady-on and a visual appearance of a predetermined special visual function."  ('437 patent at 9:7-10; '265 patent at 8:23-25.)  "Special visual function[s]" or "special lighting effects" are described at length in the specifications and the parties agree—as previously discussed—that they include pulsing/twinkling, changing color, shimmering or flashing.  (*See* '437 patent at 1:28-36, 2:47-54; '265 patent at 1:28-36, 2:47-54.)  Giving this term its plain and ordinary meaning, "said special lighting effect" must refer to whichever special lighting effect or effects are programmed and not "steady-on."

"Periodically repeating said special lighting effect for a predetermined period of time"

The Court finds that no construction is necessary for the term "periodically repeating said special lighting effect for a predetermined period of time" as it appears in claim 11 of the '437 patent and claim 1 of the '265 patent.  There is no fundamental disagreement as to the plain and ordinary meaning of this term; the parties agree that, as described in the specification, the circuit "includes a timing device which repeats the special effect on a cyclical basis, the effect being

---

[4]    The parties agreed these terms can be construed together.  (ECF No. 81 at 58:16-24, 59:17-23.)

triggered by the timer." ('437 patent at 4:67-5:2; '265 patent at 4:67-5:2.) What the parties dispute is what length of time that "predetermined period of time" includes. (*See* ECF No. 81 at 78:23-79:8, 79:20-23.) That disagreement is not for this Court to determine on claim construction. *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1331 (Fed. Cir. 2011) ("It is well settled that the role of a district court in construing claims is not to redefine claim recitations or to read limitations into the claims to obviate factual questions of infringement and validity but rather to give meaning to the limitations actually contained in the claims, informed by the written description, the prosecution history if in evidence, and any relevant extrinsic evidence.").

"Interrupt"

The term "interrupt" appears in claim 11 of the '437 patent and claim 1 of the '265 patent. At the *Markman* hearing, the parties reached an agreement that this term means "on/off." (ECF No. 81 at 84:2-5 (Defendant indicating "interrupt" means "on/off"); *id.* at 84:14-16 (Plaintiff indicating "[w]e can live with on and off. I think 'interrupt' could be described as on and off"); *id.* at 84:23-24 (Plaintiff stating that "on and off would be consistent with the specification").) Plaintiff has now indicated it "does not agree to the construction for 'interrupt' as 'on/off' without an additional caveat" that "[a] POSA would understand that 'off' includes something less than absolutely no electrical current, e.g., a decrease in power below the threshold sufficient to cause the first switching circuit to reset and stay in its steady-on state." (ECF No. 82 at 1; ECF No. 82-2 at 3.)

The Court finds that no construction is necessary for the term "interrupt" as it appears in claim 11 of the '437 patent and claim 1 of the '265 patent. The ordinary and customary meaning of "interrupt" is consistent with "on/off." Further, the specifications of both the '437 and '265 patents use "on/off" in the same manner as it uses the term "interrupt," describing that "[t]here is

9

preferably a second switching circuit in communication with said first circuit, configured to periodically *interrupt* the flow of current to said first circuit, at an interruption frequency (i.e. *on/off* switching rate) sufficient to cause the second circuit to reset to its steady on state[.]" ('437 patent at 4:38-42 (emphasis added); '265 patent at 4:38-42 (same).)  Plaintiff's proposed construction would improperly add language not consistent with the intrinsic record.

"Illumination pulses"

The Court finds that no construction is necessary for the term "illumination pulses" as it appears in claim 11 of the '437 patent and claim 1 of the '265 patent.  As Defendant contends, the plain and ordinary meaning of the term is "pulses of light."  (ECF No. 81 at 87:21-25.)  The specification, the "single best guide to the meaning of a disputed term," *Vitronics Corp.*, 90 F.3d at 1582, confirms this interpretation, describing that "the switching will produce a plurality of steady on illumination pulses in the illumination element, but the user will see a substantially steady light."  ('265 patent at 4:46-48; '437 patent at 4:46-48 (same).)

"First switching circuit"

The Court finds that no construction is necessary for the term "first switching circuit" as it appears in claim 1 of the '265 patent.  The specification explains that the first switching circuit "contain[s] a controller for controlling the power to said illumination element to produce a predetermined special illumination visual lighting effect in the illumination element[.]" ('265 patent at 2:14-17.)  The parties do not appear to dispute the function of the "first switching circuit" but rather its location.  (ECF No. 81 at 96:15-17.)  The specification states that the first switching circuit "may be combined into a single unit [with the illumination element] or physically separated."  ('265 patent at 4:7-8.)  Defendant's proposed construction that the first switching circuit is "distinct from and not within" the illumination element, (ECF No. 70 at 43), is

inconsistent with the plain language of the specification. Therefore, the plain and ordinary meaning of this term, supported by intrinsic evidence, is a circuit that contains "a controller for controlling the power to said illumination element to produce a predetermined special illumination visual lighting effect in the illumination element." ('265 patent at 4:28-31.)

## IV.    CONCLUSION & ORDER

For the foregoing reasons, and for other good cause shown,

IT IS, on this 22nd day of April 2026, hereby ORDERED that the Court construes the disputed claim terms as follows:

1. "Illumination element" is to be given its plain, ordinary and customary meaning, which is a bulb, such as an LED, incandescent lamp or equivalent which produces light in response to electrical current.

2. "In communication with said illumination element" is to be given its plain, ordinary and customary meaning, which is that a first switching circuit is in communication with said illumination element.

3. "proceed to . . . special lighting effects" and "proceeding to other special lighting effects" are to be given their plain, ordinary and customary meaning, which is "proceeding from steady-on to a visual lighting effect."

4. "said special lighting effects" and "said special lighting effect" are to be given their plain, ordinary and customary meaning, which is referring to whichever special lighting effect or effects are programmed and not "steady-on."

5. "periodically repeating said special lighting effect for a predetermined period of time" is to be given its plain, ordinary and customary meaning, which is that the special effect is repeated on a cyclical basis triggered by a timer.

11

6. "Interrupt" is to be given its plain, ordinary and customary meaning, which is "on/off."

7. "Illumination pulses" is to be given its plain, ordinary and customary meaning, which is "pulses of light."

8. "First switching circuit" is to be given its plain, ordinary and customary meaning, which is "circuit that contains a controller for controlling the power to said illumination element to produce a predetermined special illumination visual lighting effect in the illumination element."

**IT IS FURTHER ORDERED**, for the avoidance of doubt, that "a person of ordinary skill in the art" (POSA), which is not a claim term disputed by the parties, and the meaning of which the parties agreed to at the *Markman* hearing, "would have had at least a bachelor's degree in computer engineering, electrical engineering, or equivalent, and at least two years of experience related to electronic devices or related fields."

**IT IS FURTHER ORDERED**, for the avoidance of doubt, that the meaning of the following terms, which has been agreed upon by the parties, is as follows:

1. "Steady-on" shall mean "appearance of substantially uniform illumination."

2. "Illuminated state" shall mean "condition of an illumination element when producing a lighting effect."

The Court reserves the right to revisit and amend the claim construction as this matter progresses if necessary, including during trial. *Pressure Prods. Med. Supplies v. Greatbatch Ltd.*, 599 F.3d 1308, 1315-16 (Fed. Cir. 2010) (noting that it was not improper for a district court to supplement the definition of a disputed term during trial because while there is "the potential for surprise and prejudice in a late adjustment to the meaning of claim terms," it is also true that "a

trial judge may learn more about the technology during the trial that necessitates some clarification of claim terms"); *Jack Guttman, Inc. v. Kopykake Enters.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.").

Dated: April 22, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

13